**Electronically Filed
Intermediate Court of Appeals
28249
10-MAY-2012
08:19 AM**

NO. 28249

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


GLOBALMART, INC., dba LAND MARK DEVELOPMENT CO.,
Plaintiff-Appellant,
v.
POSEC HAWAII, INC., Defendant-Appellee
AND
JOHN DOES 1-50, JANE DOES 1-50, DOE
PARTNERSHIPS 1-50, DOE CORPORATIONS 1-50,
DOE ENTITIES 1-50; AND DOE GOVERNMENTAL UNITS 1-50,
Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 05-1-1687)

MEMORANDUM OPINION
(By: Foley, Presiding Judge, Fujise and Reifurth, JJ.)

This dispute revolves around Plaintiff-Appellant Globalmart, Inc., doing business as Land Mark Development Co.'s ("Land Mark") attempted purchase of eight condominium units in a then yet-to-be-built Honolulu high-rise project at 909 Kapiolani Boulevard (the "Project") from Defendant-Appellee Posec Hawaii, Inc. ("Posec") for $3,345,000.00. The central issues in the case are the enforceability of a June 2004 Memorandum of Understanding ("MOU") entered into between the parties and whether Posec fraudulently induced Land Mark to surrender any rights it had under the MOU by its subsequent execution of the Deposit Receipt and Sales Contract ("DRSC").

Land Mark appeals from the March 3, 2006 Order Granting Defendant Posec Hawaii, Inc.'s Motion For Summary Judgment, Filed December 23, 2005 ("Order Granting MSJ"); the September 15, 2006 Order Granting Defendant Posec Hawaii, Inc.'s Motion For Attorneys' Fees And Costs, Filed March 2, 2006 ("Order Granting

Fees and Costs"); and the October 6, 2006 Final Judgment, which were entered in the Circuit Court of the First Circuit ("Circuit Court").[1/]

Land Mark argues that the Circuit Court erroneously granted Posec's motion for summary judgment because (A) the MOU is enforceable; (B) if the DRSC(s) superseded the MOU, Posec is liable for fraudulent inducement; and (C) Land Mark should have been permitted additional time to conduct discovery pursuant to Hawaiʻi Rules of Civil Procedure ("HRCP") Rule 56(f). Land Mark also (D) challenges the award to Posec of attorneys' fees and costs.

We vacate the Order Granting Fees and Costs and Paragraph 2 of the Final Judgment. We affirm in all other respects and remand the case for proceedings consistent with our opinion.

I. BACKGROUND

    A. Pertinent Facts

    Young K. Shin ("Shin"), a native of Korea, is the president/chief executive officer of Land Mark, a California corporation. Shin has difficulty reading and speaking English.

    In June 2004, Shin participated in negotiations with Ki Young Chu ("Chu"), the vice president of a corporation with an interest in Posec, for the purchase by Land Mark of eight condominium units at the Project. The negotiations were conducted in Korean. Throughout the process, Chu frequently telephoned Wonjae Jun ("Jun"), Posec's chief executive officer, to keep him informed about the progress of the negotiations. According to Shin, Jun insisted that Land Mark's $167,250.00 deposit for the eight condominium units be non-refundable. In turn, Shin insisted on a binding sales price to facilitate Land Mark's resale plans. When the negotiations concluded, a bilingual attorney recorded the parties' agreement in the MOU. The MOU was "made and entered into" on June 14, 2004, although Shin's signature was dated June 28, 2004, and Jun's signature was

---

[1/]    The Honorable Gary W.B. Chang presided.

2

undated.

The MOU explicitly states that it is partially binding and partially hortatory. Specifically, the MOU provides in part:

[The] purpose of this Memorandum is to set forth [Land Mark]'s intention in entering into a purchase agreement with [Posec] to purchase the property described encompassing all eight condominium units on the 18th floor (the "Property") of the building to be constructed at the common address of 909 Kapiolani, Honolulu, Hawaii (the "Building"), in accordance with the general terms set forth below . . . .

[Land Mark] and [Posec] agree to use their best efforts to attempt to negotiate the terms and conditions of a definitive Purchase Agreement promptly after the full execution of this Memorandum . . . . [It] is anticipated to be the form of agreement ("Standard Form Agreements") used by [Posec] to sell other newly constructed condominium units in the Building in the same selling phase, and will reflect, among other items, the following:

. . . .

2. Purchase Price. The Purchase Agreement shall provide that total purchase price for the eight individual condominium[s] comprising the Property will be three million three hundred forty [sic] thousand Dollars ($3,345,000) (the "Purchase Price") with each unit being priced [as] follows in accordance with the unit numbers reflected in the plan:

| Unit A1 | $455,000 | Unit C1 | $325,000 |
| Unit A2 | $455,000 | Unit C2 | $325,000 |
| Unit B1 | $525,000 | Unit C3 | $325,000 |
| Unit B2 | $575,000 | Unit C4 | $360,000 |

The Purchase Price will be paid as follows:

a. Within five business days of the full and complete execution of this Memorandum by [Land Mark] and [Posec], and in consideration of paragraph 5 herein and notwithstanding any contrary provision in the Purchase Building, [Land Mark] will pay a non-refundable deposit of One Hundred sixty seven thousand two hundred fifty Dollars ($167,250) (the "Deposit") representing five percent (5%) of the Purchase Price . . . .

b. The balance of the purchase price . . . shall be payable at closing of the sale of the Property to [Land Mark], its nominee [or] assignee. Notwithstanding anything to the contrary, the property need not be sold as one single transaction, but may be sold by [Posec] to [Land Mark] or its nominee or assignee as eight separate transactions which may close on different dates.

. . . .

5. Exclusive Right to Enter into Purchase Agreement. [Land Mark] shall have the exclusive right to negotiate and enter into the Purchase Agreement for purchase of the Property from [Posec]. [Posec] hereby agrees not to offer for the sale or negotiate the sale of the property or other conveyance to any third party.

6. Standard Form Agreement. [Posec] agrees to provide [Land Mark] with a complete set of Standard Form

Agreements for the purchase of each of the eight condominium units comprising the Property after the date of this Memorandum.

       7.    Assignment.  [Land Mark] will have the right to assign its rights and delegate its obligations under the Purchase Agreement to third party assignees.

*This Memorandum is intended to indicate the present [intent] of the parties with respect to the Property and, except for agreements contained in Paragraphs 2, 5, 6 and 7 above, shall not be construed to constitute a binding agreement with respect thereto.  Except for the obligations created in Paragraphs 2, 5, 6 and 7, neither party may claim any legal rights against the other by reason of the signing of this Memorandum.*  Neither party may rely on any act, omission, communication, circumstance or fact [that] may be inconsistent with this paragraph.

Upon the full execution of the Memorandum, [Posec] will immediately prepare and forward to [Land Mark] the Standard Form Agreement for each of the eight condominium units comprising the Property in accordance with the terms of this Memorandum.

(Emphasis added).

On July 1, 2004, Hong Lee ("Lee"), Posec's coordinator on the Project, telephoned Shin and told him that he would fax Standard Form Agreements for Shin to sign.  According to Shin, he received only three pages of a DRSC from Lee.  Shin said that Lee "expressed great urgency in getting [Shin] to sign the DRSC and send the cashier's check."  Lee allegedly told Shin "not to worry because [Shin] had a binding MOU signed by Posec's CEO."

On July 1, 2004, Shin signed and, on July 2, 2004, faxed back a single DRSC signature page to Lee.  Jun's countersignature is dated July 8, 2004.  Lee contends that, pursuant to Shin's authorization, he attached the single signature page to eight separate DRSCs.  Shin disputes that he authorized Posec to use the same signature page for eight different contracts.  Each DRSC pertains to one of the eight condominium units and provides a purchase price identical to those found in the MOU.

Above Shin's signature, the DRSC states:

By signing this page, Buyer acknowledges having read this Contract, including the attached Addendum "A", in full and is aware of and accepts the terms, conditions, limitations and disclaimer of warranties described herein, and acknowledges that if Seller accepts this offer, this Contract is the entire agreement between the parties.

According to Shin, despite his affirmation in the DRSC, he was

not presented with and did not see Addendum "A" before he signed the DRSC. Lee agrees, stating that he did not fax the Addendum "A" along with the DRSC to Shin "because it's too thick, and he told me he is going to, going to pick up here in Hawaii." Shin does not deny that he thereafter received the Addendum "A", but does not say when he received it.

Addendum "A" reiterates that the DRSC and the Addendum "A" (collectively, the "Contract") "is the entire Contract between Seller and Buyer." In addition, it adds that "Anything which [sic] Seller and Buyer have talked about in any negotiations, any promise, and any past understanding or agreement (whether in writing or not) is cancelled if not contained within this Contract." Addendum "A" explains that the Contract is a non-binding reservation and can be terminated at any time by either party, with or without cause, until the effective date for a contingent final public report or the issuance of a final public report by the Hawai'i Real Estate Commission.

Shin express mailed a cashiers check for $167,250.00 to Lee, who said, according to Shin, that he would place the money in escrow accounts for the eight condominium units. To finance the deposit, Shin contends that he took out a second mortgage on his home and borrowed money from a friend. In addition, Shin claims to have spent more than $50,000.00 for advertising the availability of the units for sale and other sales costs. By April 29, 2005, Land Mark had entered into sales contracts for five of the units in reliance upon the MOU's purchase-price terms.

On April 29, 2005, Posec's attorney sent Shin a letter ("April 29, 2005 Letter") notifying him that Posec was terminating the DRSC(s) on the grounds that (1) the DRSC cancelled the MOU, (2) Hawaii Revised Statutes ("HRS") § 514A-62 prohibits a condominium developer from entering into a contract that is binding on the purchaser until the Real Estate Commission issues an effective date for a contingent final public report or

5

a public report,[2] and (3) Addendum "A" states that the DRSCs are non-binding reservations that can be terminated at any time, with or without cause.  By copy of the letter, the parties' escrow agent was instructed to return to Land Mark all of its deposits.  According to Posec, upon termination of the DRSCs, Posec offered replacement sales contracts "at a reduced concession price to partially compensate for the increase[d] construction costs."  Posec's attorney sent an August 25, 2005 letter to Land Mark's attorney in which Posec offered to re-sell the units to Land Mark for $3,993,500.

    B.    Subsequent Litigation

           Land Mark filed the Complaint in this case on September 21, 2005, seeking specific performance of the MOU and stating claims for breach of contract and fraudulent inducement.  In October and November 2005, the parties participated in mediation.  During mediation, no discovery took place.  Posec filed a motion for summary judgment on December 23, 2005.

           Land Mark contends that its opposition memorandum on summary judgment was hampered by discovery problems.  Land Mark's attorney filed a Declaration of Counsel, notifying the Circuit Court that Posec had produced some documents the day before Land Mark's opposition memorandum was due and that Posec's answers to interrogatories were largely unresponsive.  The Declaration of Counsel argued that Land Mark "should be permitted time to compel evidence withheld by Defendant in its discovery responses concerning the amount and urgency of presales for Defendant, imposed by its lenders, or other parties."

           At the February 22, 2006 hearing on Posec's motion for summary judgment, the Circuit Court ruled in favor of Posec:

> The Court does still maintain its conclusion that the agreement, the [DRSC], did create rights and did supersede the -- and cancel the Memorandum of Understanding to the extent that either party after the execution of the DRSC -- or whatever that acronym is -- the Purchase agreement, let me call it that -- that the Purchase Agreement did create the right of either the Buyer or the Seller to terminate the

---

    [2]    The April 29, 2005 Letter states that, as of that date, only a preliminary public report had been issued and Posec had "yet to even file a contingent final public report with the Real Estate Commission."

> contract.  The Purchase Agreement also created the effect of cancelling the Memorandum of Understanding.  There's no evidence that the terms of the Purchase Agreement varied from what is standard in the community regarding reservations of a project that is about to be constructed or in the process of being constructed.  And this Court believes that the public policies behind affording parties to such reservation agreements -- the right to terminate or cancel agreements prior to the effective date of the Public Reports -- is one that is a positive consumer protection device, particularly given the often common, unforeseen problems with construction project[s] of this magnitude.  So the Court maintains its inclination and will respectfully grant the Motion for Summary Judgment.

The Order Granting MSJ was entered on March 3, 2006.  The Circuit Court awarded Posec $42,800.00 in attorneys' fees and $910.41 in costs on September 15, 2006.  Pursuant to the Order Granting MSJ and Order Granting Fees and Costs, the Final Judgment was entered on October 6, 2006.

## II.  STANDARDS OF REVIEW

### Summary Judgment

"This court reviews a trial court's grant of summary judgment *de novo*."  *Kamaka v. Goodsill Anderson Quinn & Stifel*, 117 Hawai'i 92, 104, 176 P.3d 91, 103 (2008).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, [this court] must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (brackets in original) (quoting *Price v. AIG Hawai'i Ins. Co.*, 107 Hawai'i 106, 110, 111 P.3d 1, 5 (2005)).

### Contract Interpretation

"When reviewing the court's interpretation of a contract, the construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court."  *Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship*, 115 Hawai'i 201, 213, 166 P.3d 961 973 (2007) (quoting *Mikelson v. United Servs. Auto. Ass'n*, 107 Hawai'i 192, 197, 111 P.3d 601, 606 (2005)) (internal quotation marks omitted).

7

Denial of a Continuance Pursuant to HRCP Rule 56(f)

"The circuit court's decision to deny a request for a continuance pursuant to HRCP Rule 56(f) shall not be reversed absent an abuse of discretion." *Assocs. Fin. Servs. Co. of Haw., Inc. v. Richardson*, 99 Hawai'i 446, 454, 56 P.3d 748, 756 (App. 2002).

Attorneys' Fees and Costs

"The trial court's grant or denial of attorney's fees and costs is reviewed under the abuse of discretion standard." *Sierra Club v. Dep't of Transp. of the State of Haw.*, 120 Hawai'i 181, 197, 202 P.3d 1226, 1242 (2009) (brackets omitted) (quoting *Kamaka*, 117 Hawai'i at 105, 176 P.3d at 104).

III. DISCUSSION

A.    Enforceability of the MOU

In its first point of error, Land Mark contends that the MOU is enforceable and that this court should therefore order Posec to sell the Property to Land Mark in accord with the MOU's terms.  The MOU, however, is unenforceable because it lacks critical terms and conditions and because it affirmatively indicates the parties' intention to further negotiate those terms and conditions.

1.    The MOU is unenforceable

Setting aside initially the effect of the DRSC(s) and Addendum "A", the MOU states that Paragraphs 2, 5, 6, and 7 of the MOU, and only those paragraphs, were intended to be binding and create certain obligations.  The MOU explicitly states that it:

> is intended to indicate the present [intent] of the parties with respect to the Property and, except for agreements contained in Paragraphs 2, 5, 6 and 7 above, shall not be construed to constitute a binding agreement with respect thereto.  Except for the obligations created in Paragraphs 2, 5, 6 and 7, neither party may claim any legal rights against the other by reason of the signing of [the MOU].

The MOU's binding terms clearly do not constitute an enforceable agreement for the sale of the eight condominium units.  "It is a fundamental principle of law that there must be mutual assent or a meeting of the minds on all essential elements

8

or terms in order to form a binding contract." *Carson v. Saito*, 53 Haw. 178, 182, 489 P.2d 636, 638 (1971) (quoting *Honolulu Rapid Transit v. Paschoal*, 51 Haw. 19, 26-27, 449 P.2d 123,127 (1968)) (internal quotation marks omitted). In agreements for the sale of land, the essential terms are "the identification of the parties, a description of the property sold, the price, the time and manner of payment and any other terms in the agreement which are essential to the agreement." *In re Application of Sing Chong Co.*, 1 Haw. App. 236, 239, 617 P.2d 578, 581 (1980). However, "if the contract . . . or the negotiations of the parties affirmatively disclose or indicate that *further* negotiations, terms and conditions are contemplated, the proposed [contract] is considered incomplete and incapable of being specifically enforced." *Francone v. McClay*, 41 Haw. 72, 78 (Haw. Terr. 1955); *Sing Chong*, 1 Haw. App. at 239, 617 P.2d at 581 (an agreement of sale of land that contains the essential terms is enforceable "if the facts indicate that the parties at the time it was entered into had no expectation of further provisions to be negotiated later").

Here, a description of the property to be sold is not found in any of the MOU's binding provisions. Because a description of the property is an essential term, the MOU is not enforceable. Furthermore, the terms of the MOU plainly and unmistakably contemplate additional terms and further negotiations before the sale of the units. For example, the MOU gives Land Mark "the exclusive right to negotiate and enter into the Purchase Agreement for purchase of the Property from [Posec]" and states that the "general terms" of the MOU "are provided only to form a general basis and guideline for entering into a full and final [P]urchase Agreement[.]" The non-binding paragraphs of the MOU state that the yet-to-be-negotiated Purchase Agreement:

> will provide the terms under which Land Mark or its nominee will purchase the Property, including but not limited to:(1) title matters;(2) condominium compliance matters;(4) [sic] due diligence;(5) a time frame for commencement of construction of the building which will contain the building which will contain the Property; and (6) the closing date.

Therefore, Land Mark is not entitled to the specific performance it seeks — namely, an order obligating Posec "to sell the

Property to [Land Mark] pursuant to the [MOU.]"

In this context, the designation of certain terms as "binding," at most, constitutes an agreement to agree to a subsequent Purchase Agreement incorporating those terms. An agreement to agree, however, is an "unenforceable agreement that purports to bind two parties to negotiate and enter into a contract." BLACK'S LAW DICTIONARY 78 (9th ed. 2009); *see also Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 948 (Wash. 2004) (An agreement to agree is "an agreement to do something which requires a further meeting of the minds of the parties and without which it would not be complete."). Consequently, agreements to agree are unenforceable. *See Carson*, 53 Haw. at 180-82, 489 P.2d at 637-38; *see also Autry v. Republic Prods.*, 180 P.2d 888, 893 (Cal. 1947) ("There is no dispute that neither law nor equity provides a remedy for breach of an agreement to agree in the future."); *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 417 N.E.2d 541, 543 (N.Y. 1981) ("a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable").

The "binding" paragraphs of the MOU, among other things, give Land Mark the "exclusive right to negotiate and enter into the Purchase Agreement" and mandate that Posec provide Land Mark with a "complete set of Standard Form Agreements for the purchase of each of the eight condominium units . . . ." The remaining "binding paragraphs" merely purport to define specific terms to be found in the final Purchase Agreement. Thus, the "binding" terms of the MOU constitute nothing more than an agreement to negotiate and enter into a contract in the future. Therefore, the MOU is unenforceable.

2.     Whether the DRSC superseded the MOU is moot

Land Mark presents several theories in support of its position that the DRSC did not supersede the MOU and that the MOU, therefore, remains in effect. The argument is moot, however, because the MOU is unenforceable. *In re Application of Thomas*, 73 Haw. 223, 226, 832 P.2d 253, 254 (1992) ("A case is moot where the question to be determined is abstract and does not

10

rest on existing facts or rights."). Thus, we will not consider it. *See Wong v. Bd. of Regents, Univ. of Haw.*, 62 Haw. 391, 395, 616 P.2d 201, 204 (1980) (citing *Territory v. Aldridge*, 35 Haw. 565, 567-68 (Haw. Terr. 1940)) ("Courts will not consume time deciding abstract propositions of law or moot cases, and have no jurisdiction to do so.").

B.    Land Mark's fraudulent-inducement claim

Land Mark contends that the Circuit Court erred in granting Posec summary judgment on Land Mark's fraudulent-inducement claim, which, Land Mark argues, arises if the DRSC(s) supersede the MOU. The argument is not moot, irrespective of our conclusion above with regard to the unenforceability of the MOU, because Land Mark contends that it expended more than $50,000 in advertising and sales expenses as a result. Since a party has the option to sue for damages on a fraudulently-induced contract, *Matsuura v. E. I. du Pont de Nemours & Co.*, 102 Hawai'i 149, 174, 73 P.3d 687, 712 (2003), we consider the claim independent of the unenforceability of the MOU.

"To constitute fraudulent inducement sufficient to invalidate the terms of a contract, there must be (1) a representation of a material fact, (2) made for the purpose of inducing the other party to act, (3) known to be false but reasonably believed true by the other party, and (4) upon which the other party relies and acts to [his or her] damage." *Pancakes of Haw., Inc. v. Pomare Props. Corp.*, 85 Hawai'i 300, 312, 944 P.2d 97, 109 (App. 1997) (brackets in original) (quoting *Honolulu Fed. Sav. & Loan Ass'n v. Murphy,* 7 Haw. App. 196, 201, 753 P.2d. 807, 811 (1988) (internal quotation marks omitted). Because we view the evidence in the light most favorable to the non-moving party, we assume for purposes of our analysis that Posec did not provide Addendum "A" to Land Mark until after Shin executed the DRSC.[3/] Nevertheless, the Circuit Court did not err

---

[3/]    Land Mark's argument with respect to Posec's alleged failure to deliver Addendum "A" along with the DRSC appears limited to whether the terms of Addendum "A" differed from Lee's representations concerning consistency between the DRSC and the MOU and the binding nature of the MOU. In addition,
(continued...)

11

in granting Posec summary judgment on the fraudulent-inducement claim because Land Mark failed to identify any actionable representations of material fact.

Land Mark contends that Lee told Shin to sign the DRSC, assuring him that he "should not worry because Posec was following the terms of the MOU," and because Land Mark "had a binding MOU signed by Posec's CEO." However, "it is the well-settled general rule that fraud cannot be predicated upon misrepresentations of law or misrepresentation as to matters of law." *Kyles v. Lantis*, 39 Haw. 440, 444 (Haw. Terr. 1952).[4/] Lee's statements rest on a legal foundation: his interpretation of the MOU and understanding of its legal effect. That is, one cannot determine whether the statements are true or false without applying the law of contracts and principles of contractual interpretation. Thus, Land Mark had no right to rely on Lee's statements.[5/] *See id.*

Land Mark also claims that Lee failed to tell Shin that the DRSC was only a reservation or that Posec could not accept a nonrefundable deposit. Even if we were to treat these as omissions of material fact, however, omissions of material fact are treated differently than affirmative representations. 2 DAN

---

[3/] (...continued)
Land Mark contends that a material question of fact existed as to whether Posec deliberately concealed Addendum "A" in order to deceive Land Mark into thinking that the MOU was binding. What is clear, however, is that Land Mark does not contend that it never received Addendum "A", and that it did not thereafter object to its terms or any inconsistency between its terms and Lee's representations until Posec terminated the DRSC.

[4/] In its reply brief, Land Mark notes that the Federal District Court for the District of Hawai'i in *Elliot Megdal & Assocs. v. Hawaii Planing Mill, Ltd.*, 814 F. Supp. 898, 903-04 (D. Haw. 1993) questioned whether the Hawai'i Supreme Court might abandon *Kyles* in light of the fact that the Restatement (Second) of Torts no longer makes any distinction between factual and legal misrepresentations. Until our Supreme Court rules otherwise, however, *Kyles* stands as good law in Hawai'i. In any event, Land Mark failed to brief the issue; it merely identified it.

[5/] Although an instrument "may be avoided where its execution is obtained by misrepresentation of its contents," *Cummins v. Cummins*, 24 Haw. 116, 121 (Haw. Terr. 1917), Land Mark does not identify any misrepresentation as to the terms of Addendum "A" which are not themselves legal conclusions. *See* 2 DAN B. DOBBS, THE LAW OF TORTS § 475, at 1363 (2001) ("When the defendant has fraudulently induced the plaintiff to execute the contract by materially misrepresenting the written terms . . . courts have often permitted plaintiffs . . . to pursue actions for reformation or rescission or for tort damages." (footnotes omitted)). Thus, *Kyles*, and not *Cummins*, applies.

B. DOBBS, THE LAW OF TORTS § 481, at 1375 (2001) ("the bargainer is not ordinarily obliged to make affirmative revelations of known material facts").

> One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, *if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.*

RESTATEMENT (SECOND) OF TORTS § 551(1) (1977) (emphasis added) (cited in *Miyashiro v. Roehrig*, 122 Hawai'i 461, 483 n.24, 228 P.3d 341, 363 n.24 (App. 2010)); *cf. Ellis v. Crockett*, 51 Haw. 45, 54, 451 P.2d 814, 821 (1969) (complaint alleging fraudulent failure to disclose certain facts is insufficient without an allegation of a duty to disclose).

Here, Land Mark argues that Posec's alleged failure to disclose that the DRSC was only a "reservation," or that Posec could not accept a nonrefundable deposit, fraudulently induced Land Mark into executing the DRSC. Although Land Mark cites a Texas case stating that "[s]ilence is equivalent to a false representation where circumstances impose a duty to speak[,]" *Amouri v. Southwest Toyota, Inc.*, 20 S.W.3d 165, 170 (Tex. Ct. App. 2000), it has not argued how or why Posec was under a duty to disclose something that it did not.[6/] Land Mark's argument

---

[6/] For example, Restatement (Second) of Torts § 551(2) (1977) provides as follows:

> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
>
> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
>
> (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and
>
> (d) the falsity of a representation not made with the expectation that it would be acted upon, if
>
> (continued...)

merely presupposes that Posec's conduct was fraudulent.  Thus, Posec's alleged omissions cannot support Land Mark's fraudulent-inducement claim.  Therefore, the Circuit Court did not err in granting Posec's motion for summary judgment.[7]

C.    Land Mark's HRCP Rule 56(f) request for a continuance.

In its third point of error, Land Mark contends that summary judgment was inappropriate because the Circuit Court improperly denied it the opportunity for additional discovery under HRCP Rule 56(f).[8]  Land Mark points to the Declaration of Counsel filed with its memorandum in opposition to summary judgment, which stated that the further postponement[9] of a ruling on summary judgment would allow Land Mark to discover material facts relating to: (1) "[Jun's] intent and understanding as to the terms of the DRSC at the time of the signing"; (2)

_____

[6]/(...continued)
        he subsequently learns that the other is about to act
        in reliance upon it in a transaction with him; and

                (e) facts basic to the transaction, if he knows
        that the other is about to enter into it under a
        mistake as to them, and that the other, because of the
        relationship between them, the customs of the trade or
        other objective circumstances, would reasonably expect
        a disclosure of those facts.

    [7]/    Land Mark identifies several issues of fact that it claims
preclude summary judgment on its claims.  As to those factual disputes that
relate to the MOU, they are immaterial in light of the MOU's unenforceability
and, as a result, do not create a genuine issue as to any material fact so as
to defeat summary judgment.  As to those other alleged issues of material fact
that touch upon the fraudulent-inducement claim, they either relate to
omissions where a duty has not been alleged or to legal conclusions where
reliance was unwarranted.

    [8]/    HRCP Rule 56(f) states

            **When affidavits are unavailable.** Should it appear from
        the affidavits of a party opposing the motion that the party
        cannot for reasons stated present by affidavit facts
        essential to justify the party's opposition, the court may
        refuse the application for judgment or may order a
        continuance to permit affidavits to be obtained or
        depositions to be taken or discovery to be had or may make
        such other order as is just.

Haw. R. Civ. P. 56(f).

    [9]/    The hearing on the motion for summary judgment was continued twice
previously.  There were no discovery requests pending when the motion for
summary judgment was heard.

"what [Jun] instructed [Lee] to do regarding the signing of the DRSCs, including any instructions concerning explanation of the intended impact of the DRSC"; (3) "Posec's understanding of and agreement as to the MOU prices binding the parties"; (4) "reasons that Posec needed to make additional presales at the time of entering into the MOU with Land Mark"; and (5) "reasons the DRSC changed the terms of the MOU, the time frame of such change, [and] the participants in such change."

Land Mark, however, failed to show how additional discovery would have uncovered new material facts sufficient to defeat summary judgment. HRCP Rule 56(f) "allows a party to request a delay in granting summary judgment if the party can make a good faith showing that postponement of the ruling would enable it to discover additional evidence which might rebut the movant's showing of the absence of a genuine issue of material fact." *Exotics Haw.-Kona, Inc. v. E.I. du Pont de Nemours & Co.,* 116 Hawaiʻi 277, 308, 172 P.3d 1021, 1052 (2007) (emphasis removed) (quoting *McCabe v. Macaulay,* 450 F. Supp. 2d 928, 933 (N.D. Iowa 2006)). *"The party is required to show what specific facts further discovery might unveil." Id.*

Here, Land Mark's specific-performance and breach-of-contract claims, which could have only stood if the MOU was enforceable, are defeated by the plain language of the MOU as a matter of law. Furthermore, considering Shin's full participation in this case on behalf of Land Mark, Land Mark failed to show how additional discovery or depositions would allow it to uncover any misrepresentations of material fact inducing Shin to sign the DRSC on behalf of Land Mark beyond what Shin already presented sufficient to satisfy the first element of its fraudulent-inducement claim. Thus, Land Mark failed to "demonstrate how postponement of a ruling on the motion would enable [it], by discovery or other means, to rebut [Posec's] showing of absence of a genuine issue of fact." *See Acoba v. Gen. Tire, Inc.,* 92 Hawaiʻi 1, 12, 986 P.2d 288, 299 (1999); *see also Young v. Van Buren,* No. 28543, 2010 WL 4278321, at *5 (Haw. Ct. App. Oct. 29, 2010) (SDO). Therefore, the Circuit Court did not abuse its discretion by refusing to grant Land Mark a further

continuance to conduct additional discovery.

    D.    Order Granting Fees and Costs.

        Posec filed a motion for attorneys' fees and costs, seeking $64,759.30 in fees pursuant to HRS § 607-14[10] and $1,787.77 in costs pursuant to HRCP Rule 54(d) and HRS § 607-9. Land Mark opposed the motion, arguing that, among other things, Posec was not entitled to attorneys' fees pursuant to HRS § 607-14 because Land Mark's action, or at least some of its claims, against Posec were not in the nature of assumpsit. Without providing any explanation for how it reached its decision, the Circuit Court granted Posec's motion and awarded Posec $42,800.00 in attorneys' fees and $910.41 in costs. In its final point of error, Land Mark argues that the Circuit Court erred in granting Posec attorneys' fees and costs.

        Trial courts are required "to specify the grounds for awards of attorneys' fees and the amounts awarded with respect to each ground. Without such an explanation, we must vacate and remand awards for redetermination and/or clarification." *Price v. AIG Hawai'i Ins. Co.*, 107 Hawai'i 106, 113, 111 P.3d 1, 8 (2005). In *Price*, the defendant, AIG, requested attorneys' fees pursuant to HRS § 607-14, arguing that all of the claims asserted by Price were in the nature of assumpsit. *Id.* Price argued in opposition that the action "sounded in tort and not in contract." *Id.* The circuit court awarded $20,000.00 in fees rather than $21,386.00 as requested, but did not provide any explanation for

---

[10]    HRS § 607-14 states in pertinent part:

> In all the courts, in all actions in the nature of assumpsit . . . , there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.

Haw. Rev. Stat. § 607-14 (Supp. 2011).

its decision.

The Supreme Court noted that, due to the nature of Price's argument in opposition, "the issue of apportionment between assumpsit and non-assumpsit claims was clearly before the circuit court." *Id.* The Court stated:

> although the record on appeal indicates that AIG was awarded only a portion, albeit a substantial portion, of its requested fees, it does not reflect whether the court apportioned fees between assumpsit and non-assumpsit claims. As such, we cannot effectively review whether the circuit court abused its discretion in awarding attorneys' fees as it did.

*Id.* Therefore, the Supreme Court vacated the circuit court's award of attorneys' fees and remanded for redetermination of the issue. *Id.*

The facts in *Price* are similar to those presented here. In its motion for fees and costs, Posec argued that it was entitled to recover $64,759.30 in attorneys' fees pursuant to HRS § 607-14. Before both this court and the Circuit Court below, Land Mark opposed an award of fees under HRS § 607-14 because the action was not in the nature of assumpsit. The Circuit Court, without explaining the bases for its decision, awarded Posec at total of $43,710.41, less than what Posec requested. Because of the Circuit Court's failure to explain the grounds for its award of attorneys' fees and costs,[11] we vacate the Order Granting Fees and Costs and Paragraph 2 of the Final Judgment and remand for reconsideration of the issues.

IV. CONCLUSION

The Order Granting Fees and Costs and Paragraph 2 of the Final Judgment are vacated. The Final Judgment is, in all other respects, affirmed. The case is remanded for proceedings

---

[11] The Circuit Court's failure to provide a basis for its award of costs also merits remand for clarification. *See Mist v. Westin Hotels, Inc.*, 69 Haw. 192, 201, 738 P.2d 85, 92 (1987) (remand necessary when "the record does not reveal whether the trial court applied the test of reasonableness in determining which deposition costs should be allowed or disallowed").

on the issues of attorneys' fees and costs not inconsistent with this opinion.

DATED: Honolulu, Hawaiʻi, May 10, 2012.

On the briefs:

J. Stephen Street
(Rush Moore LLP)
for Plaintiff-Appellant.

Diane D. Hastert and
Mark M. Murakami
(Damon Key Leong Kupchak Hastert)
for Defendant-Appellee.

Presiding Judge

Associate Judge

Associate Judge